STATE OF CONNECTICUT : 
: ss: **CITY OF BRIDGEPORT**
COUNTY OF FAIRFIELD : **April 4, 2014**

<u>**AFFIDAVIT**</u>

    I, Michael Alongi, a Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives, having been duly sworn, state:

    1.    I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been so since employed in 2007. Prior to ATF, I was employed by the United States Secret Service as a Federal Officer. I have been trained in various aspects of law enforcement, including firearms investigations and violent crime investigations. During my employment with ATF, I have been involved in numerous firearms and violent crime investigations and prosecutions, as well as other types of investigations and prosecutions. In the course of those investigations, I have executed search warrants, conducted surveillance, and secured other relevant information using various investigative techniques. I have acted as the case or lead investigative agent in over 75 criminal investigations and have participated in over a 100 executions of search warrants.

    2.    I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

    3.    I submit this affidavit in support of an application for a warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. 2703(c)(1)(A), authorizing agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") to ascertain the physical location of cellular telephone assigned call number 203-824-5634, which is a cellular telephone serviced



by AT&T and used by DELTON PYLES (hereinafter the "TARGET TELEPHONE"), including but not limited to E-911 Phase II data (or other precise location information) concerning the TARGET TELEPHONE (the "Requested Information"), for a period of thirty (30) days. On March 7, 2014, this Court issued a warrant authorizing ATF agents to ascertain the physical location of the TARGET TELEPHONE for a period of thirty (30) days. This affidavit is submitted in support of a request to extend that order another thirty (30) days.

4. This affidavit sets forth facts and evidence that are relevant to the requested court orders, but does not set forth all the facts and evidence that I have gathered during the course of the investigation of this matter. The statements contained in this affidavit are based, in part, on information provided by special agents and task force officers of the ATF and officers of the New Haven Police Department; and information provided by confidential informants.

5. Since this Affidavit is being submitted for the limited purpose of obtaining authorization to extend the GPS warrant for an additional thirty days, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish the foundation necessary to support the issuance of the requested warrant.

6. Probable cause exists to believe that the receipt of the Requested Information will constitute or lead to evidence of offenses involving conspiracy to possess with the intent to distribute narcotics, and the possession of narcotics with the intent to distribute, in violation of Title 21, United States Code, Sections 841 and 846 (the "TARGET OFFENSES"), as well as the identification of individuals who are engaged in the commission of these offenses. For the reasons set out in this Affidavit, there is probable cause to believe that the TARGET OFFENSES have been committed, are being committed, and will continue to be committed by DELTON

PYLES and others known and unknown. Further, there is probable cause to believe that PYLES is using the TARGET TELEPHONE to commit the TARGET OFFENSES.

## INVESTIGATION BACKGROUND

7. On February 26, 2014, a confidential informant ("CI"), whose information has proven to be accurate and reliable, conducted a controlled purchase of narcotics at the direction and under the control of law enforcement.

8. Prior to the controlled purchase, the CI was searched for excess currency and contraband with negative results. Law enforcement then provided the CI with $40 in law enforcement funds and a recording device and driven to the vicinity of 303 Norton Street in New Haven, Connecticut. 303 Norton Street is well-known to law enforcement as a location where several Bloods gang members congregate and a place from which several individuals sell narcotics. For example, in May 2013, law enforcement executed a search warrant at 303 Norton Street. During a search of the premises, officers recovered approximately 4.4 grams of crack cocaine and firearm ammunition. At the time of the search warrant, officers arrested three individuals inside the residence, at least two of whom were known associates of the Red Side Guerilla Brims set of the Bloods.

9. Law enforcement surveilled the CI as s/he approached 303 Norton Street and met with an unidentified male. During a recorded conversation, the CI ordered $40 worth of crack cocaine from the unidentified male. Several moments later, a Grey four-door Volvo bearing Connecticut registration 700 ZUA arrived in the vicinity of 303 Norton Street. The unidentified male met with the driver of the Volve and then served the CI crack cocaine.

10. After the buy, the CI met with law enforcement at a pre-designated location. There, the CI provided law enforcement with a bag containing a hard, rock-like substance that



the CI stated s/he purchased for $40 from the male who identified himself as "Tommy." A portion of the substance was field-tested and returned positive for the presence of cocaine. The CI also returned the recording device to law enforcement.

11. In addition to familiarity with 303 Norton Street, law enforcement is familiar with the Volvo. Specifically, on January 30, 2014, law enforcement officers on patrol in the area of Chapel Street and Norton Street in New Haven, Connecticut, saw the Volvo parked on the side of the road with its engine running; the left tail lamp was not lit. Officers conducted a registration check on the Volvo and found that the registration had been cancelled due to lack of insurance. Officers approached the driver of the car, who was identified as DELTON PYLES. PYLES is known to law enforcement to be a member of the Red Side Guerilla Brims set of the Bloods. Officers requested PYLES's license, at which time they learned that his license had been suspended since March 2013. PYLES was issued a summons for operating a vehicle with a suspended license, operating an unregistered motor vehicle and having insufficient insurance.

12. On March 4, 2014, United States District Judge Stefan R. Underhill issued an order permitting ATF to install a tracking device on the Volvo.

13. On March 6, 2014, a different confidential informant ("CI2"), whose information has proven to be accurate and reliable, conducted a controlled purchase of narcotics at the direction and under the control of law enforcement.

14. CI2 provided ATF with the telephone number for the TARGET TELEPHONE and advised that this was the cellular telephone used by "Coolie," which is believed to be PYLES's street name. On March 6, 2014, CI2 placed a recorded telephone call to the TARGET TELEPHONE to arrange for the purchase of $50 worth of powder cocaine with PYLES. After speaking to PYLES, CI2, wearing recording equipment and under ATF physical surveillance,



met with PYLES and purchased $50 worth of powder cocaine using ATF funds.

15. On March 7, 2014, United States Magistrate Judge William I. Garfinkel issued a search warrant authorizing ATF to ascertain the physical location of the TARGET TELEPHONE for a period of thirty days.

16. Since March 7, 2014, ATF has used a known and reliable CI to purchase quantities of crack cocaine from PYLES ranging between three and eight grams on approximately six additional occasions. Each time, the CI contacted PYLES over the TARGET TELEPHONE.

17. Using the GPS information related to the TARGET TELEPHONE, ATF has identified one potential stash house used by PYLES with a possible address of 11 Victory Drive, in New Haven. ATF has also identified two residences on Ellsworth Avenue and one on Norton Street where PYLES regularly stays at night.

18. The Requested Information will continue to assist law enforcement officers, among other things, in conducting surveillance of PYLES and allowing officers to ascertain when and where PYLES is traveling and when and where he is meeting with his narcotics customers. In addition, although cell-tower site information is helpful in knowing generally where PYLES is, it does not allow officers to initiate or conduct surveillance in a meaningful way as the Request Information will.

19. Based on the foregoing, there is probable cause to believe that the Requested Information will lead to evidence regarding the activities described above. The Requested Information is necessary to determine the location of PYLES so that law enforcement agents can conduct physical surveillance of him and identify his source of supply, as well as the identities and locations of other co-conspirators.



20. WHEREFORE, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. 2703(c)(1)(A), it is requested that the Court issue a warrant and Order authorizing agents of the ATF to obtain the Requested Information for the TARGET TELEPHONE for an additional period of thirty (30) days.

21. IT IS FURTHER REQUESTED that the Court direct AT&T to assist agents of the ATF by providing all information, facilities and technical assistance needed to ascertain the Requested Information, and further direct AT&T, the service providers for the TARGET TELEPHONE, to initiate a signal to determine the location of the TARGET TELEPHONE on the service providers' network or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the proposed warrants, and to furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the user(s) of the TARGET TELEPHONE, for a period of thirty (30) days. Reasonable expenses incurred pursuant to this activity will be processed for payment by the ATF,

22. IT IS FURTHER REQUESTED that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the TARGET TELPHONE outside of daytime hours.

23. IT IS FURTHER REQUESTED that the warrant and this Affidavit, as it reveals an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, the existence of the ongoing Court-authorized wiretap, guard against flight, and better ensure the safety of agents and others, except that working copies may be served on Special Agents and other investigative and law enforcement officers of the ATF, federally deputized state and local law enforcement officers, and other government and contract



personnel acting under the supervision of such investigative or law enforcement officers, and AT&T as necessary to effectuate the Court's Order.

24.  IT IS FURTHER REQUESTED that, pursuant to 18 U.S.C. 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), the Court authorize notice to be delayed for a period of 30 days after the termination of the monitoring period authorized by the warrant or any extensions thereof, because there is reasonable cause to believe that providing immediate notification would seriously jeopardize the investigation.

_____
Michael Alongi
ATF Special Agent

Sworn to and subscribed before me on this the 4th day of April, 2014

/s/

William I. Garfinkel
United States Magistrate Judge

## ATTACHMENT A

**Property to Be Searched**

1. The cellular telephone assigned call number 203-824-5634 (the "Target Telephone"), whose wireless service provider is AT&T Wireless.

2. Information about the location of the Target Telephone that is within the possession, custody, or control of AT&T Wireless, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## **ATTACHMENT B**

**Particular Things to be Seized**

All information about the location of the Target Telephone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of AT&T Wireless is required to disclose the Location Information to the government. In addition, AT&T Wireless must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T Wireless services, including by initiating a signal to determine the location of the Target Telephone on AT&T Wireless network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate AT&T Wireless for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

